The next case on calendar, Estrada Hurtado v. Bundy, has been submitted on the briefs, as has the following case, Orochi Montoya v. Bundy. The next case on calendar for argument is Ponkey v. LLR. The next case on calendar is Estrada Hurtado v. Bundy. Good morning, your honors, and may it please the court. I'm going to begin with the motion to dismiss before the motion for transfer issue. And the concern with the district court's ruling is that it effectively found that because there have been at least a couple examples of authorities before that found a one-year contractual provision to be reasonable, that means that in all circumstances, including the one that we had here, it would also be reasonable. This standard, however, skips over the near dozen cases that have been cited in plaintiff's briefs, including California cases and Ninth Circuit Court of Appeals cases, where the reduced statute of limitations is compared to the default standard statutory provision. For example, if the default is three or four years, courts have consistently found that when it's reduced to one year, that is unreasonable. Now, the district court relied essentially on two different district court or Ninth Circuit authorities. The first is Tompkins v. 23andMe. Tompkins, however, supports why the one-year provision here is unreasonable. In Tompkins, there was a finding that a one-year provision was reasonable. However, it was dispositive there that that provision specifically was applied bilaterally, meaning both parties had agreed to that one-year reduction. It specifically compared its facts to the Ninth Circuit decision in Picorni v. Quickstar, where there was a unilateral clause shortening the limitations period. And so Tompkins itself supports that because the one-year provision here is unilateral, that is effectively dispositive of the unreasonableness of the provision itself. The other Ninth Circuit authority that the court cited to was Hahn v. Mobile Oil. In that case, however, there was no dispute as to the enforceability of the provision there. It was just accepted as binding, so that has no binding effect here. How much of your unconscionability argument as to the one-year statute of limitations turns on your reading of it as not containing a discovery rule for accrual? It adds an additional layer of why it's unconscionable. It's unconscionable in and of itself because it's a unilateral one-year provision. But on top of that, it is an alternative basis as to why it's unconscionable in that there is a waiver of the discovery rule. What do we do with the prior panels, the fact that they decided not to reach it, that they could have? I mean, it was about unconscionability, but they didn't reach this provision. As the district court found, that's really just an issue that is left open. I view the panel's decision as the contract was so permeated with unconscionability, it just didn't feel the need to have to reach that issue. But I can't say one way or another how it would have found on that particular issue. What would the statute of limitations ordinarily be? So we've pleaded unfair competition law, which is a California statute which was created for a public reason. That one has a four-year statute of limitations. We've also pleaded false advertising law. That's another statute that was enacted for public reasons, and that one's three years. So we effectively have four-year and three-year statute of limitations. You concede that even under those, even if this is unconscionable, you're facing limitations, problems with the remaining claims, most of the remaining claims? No, no, Your Honor. Why not? No, I'm happy to get into those. So as to the eighth cause of action, the eighth cause of action specifically is conspiracy to commit violation of the seller-assisted marketing plan. And under California Supreme Court authority, that's specifically governed by the last over act rule. That means that when there's a conspiracy, it's the last over act and furtherance of that conspiracy. What about the securities and SAMP Act claims? Yeah, so that's the SAMP Act. So we also have here equitable tolling and discovery rule. So if there's anything that's under three years, plaintiffs concede that that would be time barred, anything that's two years. So if it turns on the signing of the contract, it's out. No, plaintiffs disagree with that. So if it turns on the, if the trigger date is the signing of the contract, there's still equitable tolling here. And what's the basis for tolling? So just sticking with the SAMP Act, the violation you're alleging is she didn't get the disclosures when she signed up. How does that accrue at any time other than when she signed up, which I believe was March of 2017? And I guess sort of the follow-up is what would be the basis for tolling beyond that date? Sure. So I want to distinguish the regular SAMP allegation claim versus the conspiracy to commit the SAMP violation. Under California law, even if someone could have known the claim accrued earlier, under the California Supreme Court case in Wyatt, when there's a conspiracy to violate some sort of a, to commit some sort of a tort or violate a statute, you look at the last over act in furtherance of that scheme. And plaintiffs have pleaded that as of the filing of the complaint, the SAMP Act continued to be violated. But now moving towards- With respect to- I'm sorry. Now, was it- No, go, go. No, you go. I'm sorry. You go, you go. Well, I think we're probably asking the same question, which is how, what is the violation? I mean, maybe they're violating it with respect to other people who are signing up later, but what's the violation with respect to your client after the date that she signed up and didn't get the disclosures? With respect to my client, there isn't one. But here, the claim is conspiracy to violate the SAMP Act. It's an entire scheme. And if you look at the California Supreme Court decision in Wyatt, the argument that LuLaRoe is making is effectively the same argument that the dissent made in Wyatt, which was rejected by the majority. And I think that's worth quoting from. It says, and this is the dissent, First, the majority's proposal ignores the well-settled principle discussed above, that the focus of a civil conspiracy action is indeed upon the separate torts, not the continuing nature of the scheme itself. Despite the majority's protestations to the contrary, acceptance of any last over act rule amounts to a concession that the continuing unlawful scheme is in itself a tort. That is not the law. And the majority errs in characterizing the fraud as a continuing wrong. So do you read Wyatt for the proposition that even if there's no further tort with respect to the plaintiff, the fact that there is what can be characterized as a conspiracy to commit torts with respect to other people means that the plaintiff's statute of limitations just never runs? I mean, as long as they're doing it to other people, it could be another 20 years and her statute isn't running? That's precisely how I read it. And I know that that may seem at odds with some other states and how statute of limitations typically function, but that is the California law, and there's policy reasons for it. I'll quote more from Wyatt. Please don't. Okay. Can we turn to, I guess, the equitable claims? Your client's not seeking any forward-looking relief, no longer involved. So why would the equitable claims make it? By the equitable claims, are you referring specifically to the unfair competition law? Yeah, the remedies. So just because there isn't ongoing – just because there isn't – well, first of all, there's two remedies under the unfair competition law. One is injunctive relief, and the other is essentially recovery of money that went into that scheme or project. And here, what you're talking about is the injunctive relief component. But there's still rescission here, which is an applicable remedy. And so we've pleaded claims under the unfair competition law that are not dependent on violations of other statutes. They stand on their own as equitable claims for which rescission is sought. Before you run out of time, I do want to ask you about the transfer. So you're from Costa Mesa?  You'd really rather go out to Riverside than litigate this case in L.A.? I will tell you the truth, Your Honor. I hate L.A. traffic. So if you're asking my honest preference, it would be to go to Riverside. But that's not the standard that needs to be followed here. The standard is that we have an enforceable form selection clause that specifically calls for the Eastern Division. And plaintiffs filed in the Eastern Division. And just because this judge had previously adjudicated the initial case against LuLaRoe that was filed in the Western Division, that's why plaintiff's case was related and moved to the Western Division. I mean, I think you do, but I'd like to, if you could walk me through it, that you couldn't have objected sooner to the transfer? It played out quite a bit. I get there was an arbitration, but there was no opportunity for you to raise this issue earlier? The only opportunity would have been if under the 7-3 local rules in Central District of California, if we met and conferred before defendants raised this issue. And so what I mean by that is maybe we could have filed it as early as the same date that defendants filed their motion to dismiss, or excuse me, their motion to compel arbitration. But based on our read of the law, and the district court disagreed, but based on our read of the law, a motion to compel arbitration would be decided before a motion to transfer. And in any event, I think it's really important to discuss what it is that the judge found as to why it denied transfer under a forum selection clause. It essentially found that because the judge had ruled on motions to compel earlier that it had experience with the case, and because plaintiffs waited until after the determination of the arbitration ruling to move to transfer, that that was a reason to deny enforcement of the forum selection clause. But effectively, that's a waiver analysis. And under a waiver analysis, it's a rigorous burden, including that it was, and this is under Ninth Circuit precedent, actively litigated the merits of the case for a prolonged period of time in order to take advantage of being in court. Here, there cannot be any waiver. Plaintiffs never even filed their own motion. All plaintiffs did was oppose one motion. And so effectively, the court, the district court created an end-run rule around waiver jurisprudence where you could have facts insufficient for a waiver yet still deny a transfer. It is a little bit, I don't know what legal consequence this has, but it is somewhat ironic that the forum selection clause is part of this contract that you're saying is a contract of adhesion, presumably written for the convenience of the defendant, and now here you are insisting on enforcing it. And I suppose the contract is the contract. Well, the contract is the contract, and that's not a provision that plaintiffs have ever argued as unconscionable. You could have a contract of adhesion. That doesn't necessarily mean that every single provision within that contract is being addressed as being unconscionable. And here, that's even more reason why it should be transferred to the Eastern Division. It's defendant's very own contract that they drafted, and they're now not willing to abide by the terms of that contract. So thank you, Your Honors. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Jenny Hua on behalf of defendants and appellees. Now, I'd like to start with a little bit of a framework for this Court, because if this Court agrees with the District Court that the one-year contractual limitation is enforceable, then this Court does not need to reach a slew of other issues, with possibly one exception. There would be no reason to reach the transfer issue, or whether the case should be reassigned. The Court would need to reach the questions of whether and what tolling applies. The Court would need to reach the issues of the length of the tolling periods, or the questions of whether delayed discovery rule or concealment saves any of the cases. Now, turning back to the one-year statute of limitations, which is the focus of this appeal. Of all the cases cited by the parties, not a single one does what the plaintiff asks this Court to do, which is to strike down a one-year contractual provision outside of the arbitration context, and in a case not involving a statute with an explicit anti-waiver provision. Why does that qualification outside of the arbitration context matter? Because the Supreme Court, the FAA says, and the Supreme Court has said very clearly, the state can't have a more demanding rule for arbitration than for anything else. Correct. That's exactly where I was going next, because on its face it might not sound too intuitive. But the context matters. When the Court is faced with a motion to compel arbitration, the courts are looking at multiple provisions, multiple problematic provisions, that make the arbitral forum a fundamentally inferior forum to court for one party or the other. Ronderos is the perfect example of that, the Ninth Circuit case on which the plaintiffs rely. The provision that the Court found to be akin to a one-year statute of limitations period wasn't exactly a one-year statute of limitations period. What that provision actually said was that the employee had one year in which to bring an arbitration claim to the employer. So that was an arbitration-specific clause. Ours is not, which is precisely why this Court, in its first trip to the Ninth Circuit, did not rule on the enforceability issue when it reversed the order granting Lula Rose motion to compel arbitration, because this is a clause that applies equally in court and in arbitration. Counsel, if we determine that the one-year statute of limitations rendered the arbitration unconscionable, which claims would survive, in your view? That's a very good question. I actually have this charted out, because this is a pretty complicated case with a lot of permutations. There's a different calculation as to Ms. Ponke versus Ms. Braun. We haven't even briefed the relation back doctrine as far as Ms. Braun, because she added her claims two and a half years after the cases have been going on. Well, for Ms. Ponke, who joined later and exited the system later, her possibly surviving claims include the breach of contract claim, which has a four-year statute of limitations and runs from the time that she says she might have made returns. Also, the breach of warranty claim. It's not clear from the First Amendment complaint when she allegedly or whether she even allegedly received faulty leggings, but that's another possible one that might survive. And then the RICO claims, which have four-year statute of limitations. It has other problems, but for purposes of statute of limitations, that would likely survive. What about the endless chain law claim? The endless chain law claim would not survive even without the one-year statute of limitations, because it's a three-year statute of limitations, and it should start to accrue within months of when she started. But the statute says you can recover all the consideration you paid pursuant to a scheme if the scheme violates the statute. And so doesn't it continue to run as long as she's continuing to pay? And I believe her last purchase was within three years. It was December 2018. So that might be a possible one, even without equitable tolling, which is a separate issue. That's right. And as far as the one-year statute of limitations, the other piece of why arbitration context matters is that even in the arbitration cases, if we're looking at those cases specifically, none of them are based solely on a shortened limitations provision. And like I said, there's a reason Little Row can rely on these arbitration cases, but plaintiffs can't. In cases like Thompson's, where a shortened limitations provision was found not to be unconscionable, was enforced, the issue is that that means it was so unproblematic that it can't even be one of several factors that contributes to unconscionability. Unconscionability is a cumulative analysis and a sliding scale analysis, so you must have procedural and substantive. And if you don't have as much procedural, you need to have a lot of strong substantive unconscionability. So using, again, Ronderos as an example, one of plaintiff's cases, there was a cost-splitting provision. There were FIHA claims at issue, which courts have recognized as a special beast. We don't have it here. And there were carve-outs for injunctive relief, which benefited the employee, which went to mutuality. So it was in the combination, the accumulation of all those issues, that Ronderos found the one-year provision to be problematic as part of a bigger puzzle. Are we applying federal or state law in the unconscionability analysis? State law. Okay. So these are federal cases. Correct, but they're applying the state standards. Right, but we're not applying the federal cases, applying state law. We're applying state law. That's correct. So even with the state law cases, none of them do what plaintiffs wanted to do. And maybe I'll go to Moreno next because it's a California Supreme Court case, and Your Honor asked the question earlier about the delayed discovery rule. So we think that plaintiffs misread Moreno. It is not a case where the court struck down a one-year statute of limitations. It's a case where the court actually imported the discovery rule and found that because the claims were brought within one year of discovery, found that the claims were not barred, but maybe a little bit of the factual history of Moreno would help. So there, the homeowner sued the home inspector for various issues that were not easily discoverable to the buyers. There were air ducts in the cross space that were lined with asbestos, an unsealed air return, the property was built on expansive soil, and more. But critically, the plaintiffs filed their claims within one month after they discovered the problems, after they hired engineers and specialists to go in to figure out why they've been sick over the last year. So it ended up being that the claims were filed within one year and two months of the actual inspection. And there, the contract provision that was at issue said, the one-year provision was that all claims against the home inspector had to be brought within one year of the actual inspection. And the court said, that doesn't work specifically for home inspections because there are all these claims that you can't discover quickly. What about the, I guess, to turn to the, of course, the discovery rule is not something that gets applied if the whole thing is, the lack of one, if the whole thing is unconscionable. Most of the cases, I think, I guess I see a different line between the cases, and not whether they're arbitration or not, or state or federal, but a lot of the state cases seem to deal with employment. That's correct. Why would that matter here in whatever this relationship is, which doesn't seem to be employment? You're exactly right, but that's another context that's distinct. And the reason that the shortened limitations provisions are problematic, specifically either for labor code violations or FEHA violations, they're a little bit different reasoning. For labor code, it's because, as Pellegrino calls out, there's a specific anti-waiver provision for the labor code that precludes you from waiving your rights and remedies under the labor code. That's why shortened limitations do not work for labor code violations. So the lack of bilaterality isn't doing any work? I mean, it just strikes me that that's the clearest connection to unconscionability, is like it's just not fair to impose a rule on one that's not imposed on the other. That's a great point. For the issue of mutuality, not all contractual provisions need to be entirely mutual. That's the way contracts work. It isn't at all mutual. Right. The only person who gets the benefit of this provision is. Yes, and I actually walked through the provisions of the agreement, and there are many provisions, including the one right above the one-year statute of limitations, that's beneficial only for the plaintiffs. Like provision 32, so the one-year statute of limitations is paragraph 33. Paragraph 32 says that the plaintiffs, the retailers, have the unilateral ability to cancel at any time for any reason. That's a little bit different than the statute of limitations, which is a really important right. That's true. But the point is not all these provisions have to be mutual, and so you have to look at the big picture of is it so fundamentally unfair on its own? Are these the types of claims that cannot be brought within a year? And Moreno's also instructive on that point because even the Moreno court acknowledged that contractually shortened limitations period are fine in transactions with clear triggering events. And a lot of the claims in this action have clear triggering events. To the extent they're based on allegedly moldy or problematic leggings, well, that's known at the time they receive the product. To the extent they're based on whether or not on the breach of contract issue, whether or not LuLaRoe would honor its return policy. That would have been known at the time they either tried to make its return or, according to the first amendment complaint, when they received information from other people that it would have been futile. There's a clear triggering point for those, and so a one-year statute of limitations is not unreasonable. And the fact that it's unreasonable, I don't know what the legal effect of this is, was borne out in fact because after all the changes in LuLaRoe in 2017, so that's when the allocations of the change in the return policy happened, that's when LuLaRoe changed its bonus plan and structure, there were half a dozen cases that were brought that fall, including Lemberg and five or six cases that were then consolidated into Lemberg. So retailers did bring these types of claims well within one year of whenever this occurred. But the issue is were they required to. There's a difference between electing to do it and being required to do it. But that distinction is important because the one-year statute of limitations as a default rule under California law is enforceable unless it's unreasonable. So the question is, is it so unreasonable that you can't, or as a matter of course you normally cannot discover this within a year? And that's not the case for the types of claims that are at issue. Counselor, may I ask you, do you take issue with opposing counsel's position that he and his client didn't have an early opportunity to challenge the transfer to the central western portion of the central district? No, and I think part of the fact pattern here that's so complicated is that this is really a series of three cases against Little Row. But we're just talking about this case. In this case, did he have an early opportunity to challenge the transfer to the L.A. central district? Yes. So when he originally filed his civil case cover sheet and he didn't add the related cases, there was notice of deficiency sent out by the court. And at that point, he included sparing as a related case, which caused the transfer to occur. He could have objected. He could have raised that there was a form selection clause at that point. What mechanism would he have used to object? He could have either filed an objection on its own or filed his own motion to transfer at that time. And in fact, in May 2021, it's not that there could have been a meet and confer. There was a meet and confer where the parties reached out about the possibility of a motion to transfer. So that was well within the contemplation of the plaintiff's attorneys, and the decision was to not move forward with that. So Atlantic Marine says that when there's a form selection clause and the motion to transfer is seeking to give effect to it, it's supposed to be granted unless extraordinary circumstances clearly disfavor the transfer. So is it your view that if we agree with you that he delayed in filing this motion, that that constitutes an extraordinary circumstance? Yes, it's our position that the combination of facts in this circumstance are extraordinary circumstances. The public interest in preventing the type of deliberate strategy to kind of delay this until you could tell if you can get another ruling from Judge Brewer-Watt that was in your favor now that you have a reversal from the Ninth Circuit. That's the exact type of deliberate strategy that kind of undermines the public policy and the trust in the judiciary. Sure. But I guess one of the puzzles here is that I think Atlantic Marine directs us to the forum where it was brought. And so maybe it doesn't make a difference. Maybe it's a general extraordinary circumstance. But don't you what you really have to show is that it was the public policy in the Eastern Division that Judge Brewer-Watt was challenging or channeling in the Western Division, in this case, what was a strong public policy in the Eastern Division. Now, it may be that it's a strong public policy everywhere, that's as I take it. But it does seem a little odd that when Atlantic Marine contemplates a locus to the public policy that such general considerations would obtain. And in your points, back to the question, the very procedural posture of this is an extraordinary circumstance. In virtually all, if not all, of the cases that both parties have cited, it's the defendant that's moving the transfer after the plaintiff's file. Right. Why wouldn't we frame it then that what's so extraordinary about this is that the defendant isn't willing to stay in the venue that they contracted for. But to be fair, we would probably have no problem with that venue had these cases first been brought there. Wait. This case was? This case was, but it was transferred, but was then litigated there. So if it was just a matter of efficiency and we had a new judge from the start, and maybe things would be different with sparing. So I understand that they're two separate cases, but they're really interconnected. And there are several, at least district court decisions that make that clear. It's like these are the same plaintiff's attorneys driving these two cases between sparing and Ponky. At least the first complaints were virtually identical other than with different parties. So this is really a tag team between the two cases to see if one can survive and whether we can, you know, Judge Berwatt's made rulings against them in sparing. Can we get a new court, can we get a new judge to hear this? And then sparing was in the Ninth Circuit. Ponky was in the Ninth Circuit. It wasn't until it was pretty clear that sparing was a done deal in the Ninth Circuit that Ponky was brought. And so all of these factors are kind of underlying Judge Berwatt's decision that this doesn't, I mean, these are odd circumstances. These are extraordinary circumstances. And we're not going to condone this type of judge chopping and that this is against public policy. All right. Thank you, counsel. Thank you. No questions. Your photo. Thank you, Your Honors. A few points. Defendants raised that relation back wasn't litigated in the lower court. Defendants didn't raise relation back. Plaintiffs in the opposition pointed out that defendants essentially concede that Ms. Braun's claims relate back and defendants just never oppose that. So I think it's just a concession that we do have relation back as to Ms. Braun's claims to the date that this was filed. Defendants say that there's no cases outside of the arbitration context. As the court correctly notes, it really shouldn't make any difference. Does the employment, the fact that most of these are employment cases make a difference? No, it doesn't. Indeed, we cite a handful of cases where a shortened provision was found to be unreasonable outside of the context of employment. There's Fisher versus MoneyGram. That's where consumers brought a UCL claim. Denison versus Roslyn Capital. That's a customer agreement dispute. GOSTA versus Skills Platform. That's unfair competition law brought by a customer for online games. There's even the Ninth Circuit decision in Picorni versus Quickstar, which actually was about a pyramid scheme alleging unfair competition law. Defendants claim that retailers didn't bring it within one year and that should have been reasonable. That's refuted actually by the lead case, the Lemberg case. In that case, Lemberg filed one and a half years after first onboarding. And so to claim that those cases reflect that one year is reasonable is actually refuted because they were not filed within one year of what defendants claim is the triggering point. Defendants argue that there's extraordinary circumstances here. In order for extraordinary circumstances, at least as to what applies here for public policy, there needs to be a statute or judicial decision that clearly states that there's a strong public policy. And that's from the Ninth Circuit decision, the Sun case. And I also want to point out that we did file the Sparing case as well. And to the extent that defendants want to tie Picorni to Sparing, Sparing was filed in the Eastern Division as well and transferred to the Western Division. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE